UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:13-cr-91 |
| | ) | |
| PETER ANTHONY CHIN | ) | Judge Collier/Carter |

REPORT AND RECOMMENDATION

I. Introduction

The defendant's Motion to Suppress (Doc. 12) is before the undersigned Magistrate Judge having been referred by the District Court for a Report and Recommendation pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C). Defendant moves to suppress all evidence seized as a result of a traffic stop conducted on January 14, 2013. For the reasons stated herein, I RECOMMEND the defendant's motion to suppress be DENIED.

II. Relevant Facts

A hearing was held on the defendant's motion to suppress on Thursday, March 6, 2014. Drug Task Force Agent Matthew Bales of the 10th Judicial District was the only witness called to testify. I found his testimony to be credible.

Agent Bales testified to the following: On the afternoon of January 14, 2014, Officer Bales was monitoring southbound traffic on I-75 in Bradley County, Tennessee. He observed a Silver 2012 Chrysler 300 with Virginia license plates pass him on the interstate. He decided to follow it based on the reaction of the driver. The driver had actually pushed himself back in the seat and looked down as he passed Bales' position. Bales testified this reaction was unusual. As he caught up with the vehicle on the interstate, the driver made an abrupt exit onto Paul Huff

1

Highway and turned into a gas station, the Eagle Mart. The driver, later determined to be Antoine Moore, and passenger, defendant Chin, went into the Eagle Mart and quickly returned to the car. Agent Bales continued to follow them and at approximately 4:30 pm, he observed the vehicle fail to come to a complete stop at a stop sign before entering Paul Huff Parkway. Agent Bales conducted a traffic stop along the I-75 on-ramp.

At 4:31:00 pm, Bales approached the passenger side of the vehicle and asked the driver for his license, proof of registration, and where he was traveling. The driver produced his Virginia license, a Virginia rental car agreement, and stated that they were traveling from Roanoke, Virginia to Macon, Georgia to visit family. Bales found the travel route suspicious given one would not ordinarily travel through Tennessee, much less Bradly County, to reach Macon, Georgia from Roanoke, Virginia. The passenger, Peter Chin, produced a Veterans Affairs ID card that did not contain any identifying information other than Chin's name. Bales noticed that Chin was standoffish and nervous. Chin, who was wearing dark, prescription sunglasses, also refused to make eye contact with Bales.

At 4:33:00 pm, Bales returned to his vehicle to get a notepad to write down Chin's identifying information. Chin provided his social security number and date of birth. He asked both the driver and Chin if they had ever been in trouble with the law. The driver told Bales he had been arrested for, and plead guilty to, possession with the intent to distribute cocaine about 5 years ago. Chin stated he used to steal cars and had gotten in trouble for fleeing and eluding within the last few years. At 4:34:55 pm, Bales began background checks on both driver and Chin using Blue Lightning Operations Center (BLOC), a service that provides a more complete records check than local dispatchers. Bales verified information on the rental paperwork the driver provided. While Bales was waiting to find out if there were any outstanding warrants, he called DTF Agent Mike

Patterson for back-up assistance with the traffic stop. Agent Patterson arrived on the scene within ten minutes.

At 4:46:15 pm, Agent Bales asked the driver to step outside the rental vehicle and directed him to stand in front of the police cruiser, which was equipped with a video camera. Bales conducted a brief pat-down of the driver, during which he asked if there were any drugs, weapons, or large amounts of currency inside the vehicle. The driver responded there was not. At 4:47:25 pm, Bales asked the driver for consent to search the rental vehicle for contraband. The driver granted permission to search around the vehicle, then a minute later granted permission to search inside the vehicle.

Bales then directed Chin to exit the rental vehicle and asked him if there were any drugs, weapons, or large amounts of currency inside the rental vehicle. Chin responded that there were not. Bales conducted a brief pat-down of Chin and asked him if anything in the rental vehicle belonged to him. Chin stated that a black backpack in the trunk was his. At 4:48:05 pm, Bales asked Chin for permission to search the backpack, but Chin refused to grant consent. Bales then directed Chin to stand next to the driver at the front of his police cruiser.

Bales returned to his vehicle to deploy his K-9 officer, Toby, to perform an exterior sniff of the rental vehicle prior to searching the interior. At 4:49:10 pm, as he was putting Toby's leash on, Agent Bales received information that the driver's Virginia license was valid and that neither the driver nor Chin had any active warrants for their arrest. At 4:49:50 pm, Bales deployed Toby. At 4:50:15 pm, Toby alerted on the rear driver's side door of the rental vehicle. Bales proceeded to search the interior of the rental vehicle, including the trunk, based on the driver's consent. Bales searched Chin's backpack, which was in the trunk, based on Toby's positive alert. The entire traffic stop from initiation until Toby's positive alert lasted approximately 20 minutes.

3

At 4:53:30 pm, Bales seized a loaded Hi-Point 9mm semi-automatic pistol and drug ledgers from the black backpack Chin claimed was his. Also seized was $7,440.00 in U.S. currency which was found in a black suitcase located in close proximity to the rear driver's side door. The driver of the rental vehicle claimed the black suitcase. Chin and the driver were placed under arrest and transported to the DTF Office in Charleston, Tennessee. Chin was searched again and a loaded 9 mm magazine was found in his sock. The driver admitted that he and Chin were actually traveling to Baytown, Texas to purchase heroin, and that Chin was paying him $500.00 to drive. The driver stated that this was actually his second time driving Chin. The first time Chin paid him $1,000.00.

### III. Analysis

<u>The Traffic Stop – Probable Cause</u>

Police may detain a person based on probable cause to believe that person has violated a traffic law. *United States v. Bradshaw*, 102 F.3d 204, 210 (6th Cir. 1996) (so long as the officer has probable cause to believe that a traffic violation has occurred, the resultant stop is not unlawful and does not violate the Fourth Amendment); *United States v. Ferguson*, 8 F. 3d 385, 391 (6th Cir. 1993) (A traffic stop is reasonable if there is probable cause to believe a traffic violation occurred and what else the officer suspected about the driver is irrelevant). "A traffic stop is analogous to a "Terry stop" in that, following the initial stop, the subsequent detention cannot be excessively intrusive and must be reasonably related in time to the investigation." *United States v. Wellman*, 185 F.3d 651, 656 (6th Cir. 1999); s*ee also*, *United States v. Wilson,* __F.3d__, 2007 WL 3131682, *3 (6th Cir. October 29, 2007) ("An ordinary traffic stop is like an investigative detention, the scope of which is governed by *Terry* [*v. Ohio*, 392 U.S. 1 (1968)] principles") (brackets added) (quoting *United States v. Perez,* 440 F.3d 363, 370 (6th Cir.2006)). "[A]n

4

investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *United States v. Perez,* 440 F.3d 363, 372 (6th Cir.2006) (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983)). "The investigative means used should be the least intrusive means reasonably available to verify or dispel the officer's suspicions in a short period of time." *Perez*, 440 F.3d at 372 (citing *Royer*, 460 U.S. at 500).

"To detain the motorist any longer than is reasonably necessary to issue the traffic citation, however, the officer must have reasonable suspicion that the individual has engaged in more extensive criminal conduct." *United States v. Townsend,* 305 F.3d 537, 541 (6th Cir.2002); *United States v. Aguilera-Pena*, 2011 WL 2173729, *2 (6th Cir. June 2, 2011).

A vehicle stop is reasonable when a law enforcement officer has probable cause to believe he has witnessed a traffic violation, even if the traffic offense is minor and the officer has additional subjective reasons for making the stop. *Whren v. United States*, 517 U.S. 806, 810, 812-13 (1996); *United States v. Herbin*, 343 F.3d 807, 809 (6th Cir. 2003); *United States v. Harvey*, 16 F.3d 109, 112 (6th Cir. 1994); *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993).

The courts have abandoned the former rule on so-called "pretextual" stops and now disregard an officer's subjective intentions as long as the stop itself is based on a proper purpose such as probable cause or reasonable suspicion. *See, e.g., Arkansas v. Sullivan*, 532 U.S. 769 (2001)(reversing Arkansas Supreme Court's attempt to consider an officer's subjective motivation for making a valid traffic stop); *Whren v. United States*, 517 U.S. 806, 810, 812-13 (1996)("Subjective intentions play no role in ordinary, probable cause Fourth Amendment analysis."); *United States v. Johnson,* 242 F.3d 707, 709-10 (6th Cir. 2001), *cert. denied*, 534 U.S. 863 (2001)(upholding stop for broken taillight in violation of Tennessee traffic laws regardless of officer's subjective motivation); *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993).

5

Nevertheless, "'a seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution.' *Illinois v. Caballes*, 543 U.S. 405, 407 . . . (2005)." *United States v. Everett*, No. 09-5111, 2010 U.S. App. LEXIS 7107 at *8 (6th Cir. April 6, 2010). *Everett*, a recent Sixth Circuit opinion that details the law concerning the prolongation of a traffic stop, continues:

> To qualify as reasonable seizures under the Fourth Amendment, *Terry* detentions must be "limited in [both] scope and duration." *Florida v. Royer*, 460 U.S. 491, 500, . . . (1983); *see also United States v. Hensley*, 469 U.S. 221, 235 . . . (1985) (stating that "length and intrusiveness" of a stop are relevant to *Terry* analysis). Under *Terry's* duration prong, a stop "must . . . last no longer than is necessary to effectuate the purpose of the stop." *Royer*, 460 U.S. at 500. Under its scope prong, "the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Ibid.*; *see also United States v. Sharpe*, 470 U.S. 675, 682 . . . (1985) (stating that stop must be "reasonably related in scope to the circumstances which justified the interference in the first place").

*Everett* at *9-10. "[A]n officer can lawfully detain the driver of a vehicle until after the officer has finished making record radio checks and issuing a citation, because this activity 'would be well within the bounds of the initial stop.'" *United States v. Wellman*, 185 F.3d 651, 656 (6th Cir. 1999) (further citations omitted).

Where an officer does extend the length of the stop, he must have a reasonable suspicion to justify the extension.

> "Reasonable suspicion requires specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant the continued detention of a motorist after a traffic stop." *United States v. Smith*, 263 F.3d 571, 588 (6th Cir. 2001) (citing *Terry v. Ohio*, 392 U.S. 1, 21 . . . (1968)). "'Reasonable suspicion is more than an ill-defined hunch; it must be based upon a particularized and objective basis for suspecting the particular person . . . of criminal activity.'" *Id.* (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 . . . (1981)) (alteration in original).

6

*United States v. Bell*, 555 F.3d 535, 540 (6th Cir. 2009). To determine whether a traffic stop was unlawfully prolonged, the reviewing court should test "whether he was detained longer than reasonably necessary for the Officers to complete the purpose of the stop…." *Id*. at 541 (citing *Illinois v. Caballes*, 543 U.S. 405 at 407 (2005) and *United States v. Sharpe*, 470 U.S. 675, 685-86 (1985); *Bell*, 555 F.3d at 541. Within such review, the court should include:

> "whether [the Officers] improperly extended the duration of the stop to enable the dog sniff to occur" in the particular circumstances of this case. *Caballes*, 543 U.S. at 408; *see also Sharpe*, 470 U.S. at 686 ("In assessing whether a detention is too long in duration to be justified as an investigative stop, we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant.").

*Id*. The Sixth Circuit has held that an officer's reasonable suspicion justifies both further detention and brief questioning during the course of a traffic stop without it resulting in an arrest. *United States v. Palomino*, 100 F.3d 446, 450 (6th Cir. 1996). *See, also, United States v. Bradshaw*, 102 F.3d 204, 211-12 (6th Cir. 1996)(detention in patrol car while officer issued traffic citation did not constitute an arrest); *United States v. Winfrey*, 915 F.2d 212, 216-17 (6th Cir. 1990) (15 minute detention for questioning by DEA agents permissible).

Given his observations, Agent Bales had probable cause to initiate a traffic stop for a violation of Tenn. Code § 55-8-149(c). *See United States v. Cousin*, No. 1:09-CR-89, 2010 WL 338087, at *12 (E.D. Tenn. Jan. 19, 2010) (report and recommendation adopted by district court) ("I conclude Officer Crider saw the defendant make a rolling stop and therefore had probable cause to believe defendant had committed a traffic violation and had a constitutional basis to make the initial traffic stop."); *United States v. Clark,* No. 1:10-cr-160, 2011 WL 2619076, at *2-3 (E.D. Tenn. Apr. 8, 2011) (same). That Agent Bales followed the vehicle for several minutes prior to the traffic stop is quite beside the point; so called pretextual traffic stops are

7

permissible so long as the officer has probable cause to believe that a traffic violation has occurred.   *See, e.g., United States v. Ferguson,* 8 F.3d 385, 391 (6th Cir. 1993).

The Duration of the Stop:

Agent Bales was justified in the initial stop and detention. The testimony that the vehicle failed to come to a complete stop at a stop sign is un-contradicted.   It was a lawful stop. Thus, the inquiry turns to whether the officer extended the time needed for the initial traffic stop and if so, whether he had consent which extended the duration of the stop or whether the officer had reasonable suspicion to extend the duration of the stop.   For reasons that follow, I conclude there are two bases to find that the traffic stop was not unlawfully extended.

Consent:

Chin asserts the traffic stop was unlawfully extended when Agent Bales asked Moore for consent to search. The Government argues that Agent Bales was entitled to extend the duration of the traffic stop while he ran background checks on Moore and Chin.   *See United States v. Smith,* 601 F.3d 530, 542 (6th Cir. 2010) ("Nor was it inappropriate for [Officer] Henderson to check both whether Williams [driver] and Garrett [lone passenger] had valid identification and whether they had any outstanding warrants."); *United States v. Hill,* 195 F.3d 258, 269 (6th Cir. 1999) (holding that a driver's license check is within the original scope of a traffic stop based on a traffic violation); *United States v. Wellman,* 185 F.3d 651, 656 (6th Cir. 1999) (same); *United States v. Swallows,* No. 1:12-CR-148, 2013 WL 5773261, at *3 n.1 (E.D. Tenn. Oct. 24, 2013) ("It should be noted that as a matter of course officers are permitted to carry out license checks during traffic stops, and, if conducted reasonably, such activity does not impermissibly extend a stop.").   The occupants of a vehicle may also be detained while an officer is completing the necessary background checks.   *Arizona v. Johnson,* 555 U.S. 323, 784 (2009).

Once the traffic stop was underway, Agent Bales was permitted to ask Moore for consent to search the rental vehicle.   *See, e.g., United States v. Burton,* 334 F.3d 514, 518-19 (6th Cir.

2003) (holding that request for consent to search did not unreasonably extend the duration of an ordinary traffic stop). At approximately 4:47:25 p.m., Moore granted Agent Bales consent to search, at which point Agent Bales directed Chin to exit the rental vehicle for officer safety.[1] *See, e.g., Maryland v. Wilson,* 519 U.S. 408, 414-15 (1997) ("[D]anger to an officer from a traffic stop is likely to be greater when there are passengers in addition to the driver in the stopped car. While there is not the same basis for ordering the passengers out of the car as there is for ordering the driver out, the additional intrusion on the passenger is minimal. We therefore hold that an officer making a traffic stop may order passengers to get out of the car pending completion of the stop.").

After Moore and Chin exited the rental vehicle, Agent Bales asked each of them if there were any drugs, weapons, or large amounts of cash inside the vehicle. This line of questioning is permissible and did not unlawfully extend the duration of the traffic stop because Agent Bales was still awaiting the results of the background checks. *See United States v. Everett,* 601 F.3d 484, 492 (6th Cir. 2010) ("[A]n officer may ask unrelated questions to his heart's content, provided he does so during the supposedly dead time while he or another officer is completing a task related to the traffic violation.");[2] *United States v. Bell,* 555 F.3d 535, 542 (6th Cir. 2009) ("Waiting for the results of the license check was clearly within the purpose of the initial stop, and only while waiting for the results of that check did the Officers discuss whether to call Trooper Farabaugh to walk the dog around the car. Because the Officers already were waiting for the results of the background check, any time that the Officers spent in pursuing other matters while the background check was processing, even if those matters were unrelated to the original

---

[1] Moore had already exited the rental vehicle at this point.

[2] The *Everett* Court also found that some prolongation of a traffic stop due to unrelated questioning during the course of the stop is permissible, so long as the officer does not "without reasonable suspicion, *definitively* abandon[ ] the prosecution of the traffic stop and embark[ ] on another sustained course of investigation[.]" 601 F.3d at 495 (emphasis added).

9
Case 1:13-cr-00091-CLC-WBC   Document 20   Filed 03/25/14   Page 9 of 14   PageID #: 58

purpose of the stop, did not extend the length of the stop.").

Agent Bales also asked Chin if anything in the rental vehicle belonged to him and Chin stated that a backpack in the trunk was his. Agent Bales asked Chin for permission to search the backpack but Chin refused to grant consent. This line of questioning also fell within the permissible parameters of the traffic stop, which was still in progress. *Everett,* 601 F.3d at 492; *Bell,* 555 F.3d at 542; *Burton,* 334 F.3d at 518-19. It was prudent for Agent Bales to ask Chin if anything in the rental vehicle belonged to him. *See, e.g., United States v. Humphrey,* No. 99-6498, 2002 WL 408812, at *4 (6th Cir. Mar. 13, 2002) (holding that consent from owner/driver of vehicle was insufficient to permit search of passenger's belongings absent probable cause).

Agent Bales then returned to his vehicle to deploy his K-9 officer, Toby, to perform an exterior sniff of the rental vehicle prior to searching the interior. Between the time Chin denied Agent Bales consent to search the backpack and the time Agent Bales began to prepare Toby, which lasted about 50 seconds, Agent Bales retrieved a hat from the rental vehicle for Moore due to the fact it was raining outside. As he was putting Toby's leash on, Agent Bales received information that Moore's driver's license was valid and that neither Moore nor Chin had any active warrants. Immediately thereafter, Agent Bales deployed Toby. Shortly after being deployed, Toby alerted on the rear driver's side door of the rental vehicle. Agent Bales then searched the interior of the rental vehicle, including the trunk, based on Moore's consent, which he never revoked. Agent Bales also searched Chin's backpack, which was in the trunk, based on Toby's positive alert. The search of the rental vehicle began less than four minutes after Moore granted Agent Bales consent to search same.

Moore's consent to search the rental vehicle, which was granted while Agent Bales was still awaiting the results of the background checks, lawfully extended the duration of the traffic stop. That is to say, once Moore granted consent, Agent Bales was authorized to extend the

10

traffic stop to conduct a consensual search. *See, e.g., United States v. Hernandez,* 418 F.3d 1206, 1209-10 (11th Cir. 2005) ("Once Defendant gave her consent, the clock re-started for purposes of evaluating the reasonableness of the duration of the intrusion."). There is nothing to suggest the manner and speed with which Agent Bales conducted the background checks on Moore and Chin or the search of the rental vehicle was unreasonable. *Cf. Everett,* 601 F.3d at 495 (noting that the reasonable diligence does not require officers "to move at top speed" when conducting traffic stops) (internal marks and citation omitted).

Further, at the time Toby was deployed, Agent Bales had yet to complete the purpose of the traffic stop: writing a citation for a violation of Tenn. Code § 55-8-149(c). *See, e.g., United States v. Maddox,* No. 1:13-CR-35, 2013 WL 5773337, at *3 (E.D. Tenn. Oct. 24, 2013) ("[I]t is not seriously contended by Defendant that the stop was *actually* concluded prior to Zoey's alert as Stephens had not yet written or given Defendant a ticket or warning for the speeding violation. . . . [I]t also appears from the video that Stephens had not yet returned Defendant's license and registration to him at any time before Zoey's alert")

Here the consent was obtained prior to the conclusion of the traffic stop and the discovery of the gun, drug ledgers and cash was only approximately 4 minutes after the return of the information from BLOC. I agree with the Government's argument that under the totality of the circumstances, the duration of the detention Chin complains of did not transform this lawful traffic stop into an unconstitutional seizure in violation of the Fourth Amendment, especially in light of the driver's consent and the relatively brief amount of time it took to complete the search.

<u>Reasonable Suspicion</u>:

I also conclude there is another basis to find no Constitutional violation. In addition to requiring that a traffic stop be reasonable at its inception, the Fourth Amendment also requires that it be reasonable in scope given the circumstances that justified the stop in the first place.

11

*United States v. Garrido-Santana*, 360 F.3d 565, 571 (6th Cir. 2004); *United States v. Freeman*, 209 F.3d 464, 466 (6th Cir. 2000). Once the original purpose of the traffic stop has been satisfied, continued detention is not lawful unless police have obtained additional information amounting to reasonable suspicion to believe criminal activity is afoot. *United States v. Torres-Ramos*, 536 F.3d 542, 550 (6th Cir. 2008); *Blair*, 524 F.3d at 752; *United States v. Hill,* 195 F.3d 258, 264 (6th Cir. 1999).

Looking at the totality of the circumstance, I conclude Agent Bales had reasonable suspicion to prolong the stop up to the point when Toby alerted on the rear driver's side door of the rental vehicle based on: (1) Chin's demeanor when Agent Bales first approached the vehicle; (2) Moore's and Chin's criminal histories; (3) Moore's and Chin's traveling in a rental vehicle; (4) their travel plans, which did not seem logical to the officer; and (5) Chin's wearing dark sunglasses and refusing to make eye contact with Agent Bales. *Cf. United States v. Stepp,* 680 F.3d 651, 667 (6th Cir. 2012) ("Here, the criminal history reports on Stepp and Boswell were specific and related to the same suspicions that the officer was developing—that the occupants of the vehicle might be involved in drug trafficking . . . . We agree that the specific nature of Stepp's and Boswel's criminal histories—involvement with narcotics—casts a suspicious light on the otherwise weaker indicators, particularly when combined with the dubious travel plans.")

In this case, Bales called for backup shortly after making the stop, which supports the notion that he was suspicious of drug activity and believed there was ample justification for continuing the stop. Here, the totality of the circumstances demonstrates a reasonable suspicion that criminal activity was afoot.

I agree with the Government that these circumstances in combination established sufficient probable cause to justify a continued inquiry and investigation.

<u>Propriety of the K-9 Alert:</u>

Chin also appears to challenge the propriety of Toby's alert. The Government, however,

12
Case 1:13-cr-00091-CLC-WBC   Document 20   Filed 03/25/14   Page 12 of 14   PageID #: 61

argues that Chin lacks standing to challenge the search of the vehicle and any fruit that it bore. *United States v. Stepp,* 680 F.3d at 668 n.11 ("As an initial matter, passengers typically do not have standing to challenge the probable cause to search a vehicle, assuming that the passenger's seizure was otherwise lawful."). The defendant appears not to disagree with this analysis.

Nevertheless, even if Chin had standing, I find Toby was a properly trained narcotics dog whose positive alert provided probable cause to search. Agent Bales testified at the suppression hearing regarding Toby's reliability as a drug detection dog and his alert on this specific occasion. Toby is a certified drug dog with the National Narcotics Dog Detectors Association and trains bi-weekly. *Florida v. Harris,* 133 S.Ct. 1050, 1057 (2013) ("[E]vidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert. If a bona fide organization has certified a dog after testing his reliability in a controlled setting, a court can presume (subject to any conflicting evidence offered) that the dog's alert provides probable cause to search. The same is true, even in the absence of formal certification, if the dog has recently and successfully completed a training program that evaluated his proficiency in locating drugs."). *See United States v. Patton*, No. 12-5450, 2013 WL 949481, at *2 (6th Circ. Mar. 13, 2013) ("[A]n alert of a properly trained narcotics dog while sniffing a vehicle is sufficient to establish probable cause for a search of the vehicle."). I therefore conclude the alert by Toby provided probable cause to search the luggage in the vehicle.

## IV. Conclusion

For the reasons stated herein, I RECOMMEND defendant's Motion to Suppress (Doc. 12) be DENIED.[3]

S/*William B. Mitchell Carter*
UNITED STATES MAGISTRATE JUDGE

---

[3] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 59(b)(2) of the Federal Rules of Criminal Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S. Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).