UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

UNITED STATES OF AMERICA )
) 1:13-CR-91
v. )
) Judge Curtis L. Collier
PETER ANTHONY CHIN )

**MEMORANDUM AND ORDER**

Defendant Peter Anthony Chin ("Defendant") filed a motion to suppress evidence discovered after an allegedly unlawful search (Court File No. 12). The motion was referred to United States Magistrate Judge William B. Mitchell Carter, who held a hearing on March 6, 2014 and subsequently filed a Report and Recommendation ("R&R") concluding Defendant's motion should be denied (Court File No. 20). Defendant filed an objection to the R&R (Court File No. 21) and the government filed a response (Court File No. 22).

I.  **RELEVANT FACTS**

The following recitation of facts is derived primarily from the Magistrate Judge's R&R. On the afternoon of January 14, 2014, 10th Judicial District Drug Task Force Agent Matthew Bales ("Agent Bales") became suspicious of two men in a silver Chrysler on I-75 in Bradley County, Tennessee. He grew suspicious because the car had Virginia license plates and, when it passed Agent Bales, the driver pushed himself back in his seat and looked down before abruptly exiting the highway. At 4:30 p.m., Agent Bales pulled over the car after it failed to come to a complete stop at a stop sign.

Upon request, driver Antoine Moore ("Moore") produced a Virginia driver's license and a rental agreement for the car. He said he and Defendant, who was in the front passenger seat, were traveling to Macon, Georgia to visit family. This seemed suspicious to Agent Bales, as he did not

think one would ordinary travel through Bradley County on such a trip. Agent Bales noticed Defendant was standoffish and nervous, was wearing dark prescription sunglasses, and would not make eye contact. When asked about their criminal history, Moore said he had pleaded guilty to intent to distribute cocaine five years ago, and Defendant said he used to steal cars and had gotten in trouble for eluding arrest in the last few years. Agent Bales then initiated a background check using the Blue Lighting Operations Center system ("BLOC"). He also verified the rental car information and radioed for backup.

At 4:47 p.m., while awaiting information from BLOC, Agent Bales asked Moore for consent to search the vehicle for contraband and was granted permission. Agent Bales asked Defendant whether anything in the car was his, and Defendant said a black backpack in the trunk was his. Defendant did not grant consent to search it. Agent Bales then returned to his vehicle to deploy Toby, his K-9, for a sniff of the vehicle's exterior. At 4:49 p.m., as Agent Bales was leashing Toby, BLOC reported that Moore's license was valid and that neither he nor Defendant had outstanding warrants. Seconds later, Agent Bales deployed Toby, who quickly alerted to the rear driver's side door of the rental vehicle. It took about twenty minutes from the initiation of the stop until Toby alerted.

Agent Bales searched Defendant's backpack based on Toby's positive alert and seized from it a loaded 9mm semi-automatic pistol and drug ledgers. A loaded 9mm magazine was also found in Defendant's sock. Agent Bales seized $7,440 in cash from a black suitcase near the rear driver's side door, which Moore claimed. Moore admitted they were traveling to Baytown, Texas to buy heroin.

## II.     STANDARD OF REVIEW

2

Case 1:13-cr-00091-CLC-WBC   Document 23   Filed 05/16/14   Page 2 of 6   PageID #: 70

This Court must conduct a *de novo* review of those portions of the R&R to which objection is made. 28 U.S.C. § 636(b)(1)(C). But *de novo* review does not require the district court to rehear witnesses whose testimony has been evaluated by the Magistrate Judge. *See United States v. Raddatz*, 447 U.S. 667, 675-76 (1980). The Magistrate Judge, as the factfinder, had the opportunity to observe and hear the witnesses and assess their demeanor, putting him in the best position to determine credibility. *See Moss v. Hofbauer*, 286 F.3d 851, 868 (6th Cir. 2002); *United States v. Hill*, 195 F.3d 258, 264-65 (6th Cir. 1999). The Magistrate Judge's assessment of witnesses' testimony is therefore entitled to deference. *United States v. Irorere*, 69 F. App'x 231, 236 (6th Cir. 2003).

### III. DISCUSSION

Defendant objects to the Magistrate Judge's determination that the use of K-9 Toby did not occur during an improperly extended stop. The Magistrate Judge came to this conclusion based on (1) Moore's consent to a search or (2) reasonable suspicion that Moore and Defendant were trafficking drugs.

Stopping and detaining a motorist is a seizure within the meaning of the Fourth Amendment, analyzed under the framework of *Terry v. Ohio*, 392 U.S. 1(1968). *United States v. Stepp*, 680 F.3d 651, 661 (6th Cir. 2012). While law enforcement may stop a vehicle for any traffic infraction, detention beyond the scope of the initial stop requires either consent or reasonable suspicion of criminal activity.[1] "An officer can lawfully detain the driver of a vehicle until after the officer has finished making record radio checks and issuing a citation, because this activity 'would be well

---

[1] The Magistrate Judge concluded the initial stop was constitutional based on the driver's failure to halt at the stop sign. Defendant does not object to this, so the Court need not discuss the constitutionality of the initial stop.

within the bounds of the initial stop.'" *United States v. Campbell*, 511 F. App'x 424, 428 (6th Cir. 2013) (quoting *United States v. Wellman*, 185 F.3d 651, 656 (6th Cir. 1999)). But prolonging an initial traffic stop *after* it has concluded is considered an unreasonable extension of an otherwise lawful stop. *Stepp*, 680 F.3d at 661-62 (citing *United States v. Everett*, 601 F.3d 484, 492 n.9 (6th Cir. 2010)). Because such a rule is open to abuse, in that "a crafty officer, knowing this rule, may simply delay writing a ticket for the initial traffic violation until after she has satisfied herself that all of her hunches were unfounded, [courts] also treat the unreasonable *extension* of a not-yet-completed traffic stop as a seizure." *Id.* at 662 (emphasis added).

"An officer's inquiries into matters unrelated to the justification for the traffic stop . . . do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop." *Everett*, 601 F.3d at 490 (quoting *Arizona v. Johnson*, 555 U.S. 323 (2009)). Even if this "extraneous questioning" prolongs the stop to a minimal degree, the stop is not "measurably" extended. *Stepp*, 680 F.3d at 662. Moreover, the Sixth Circuit has indicated that "questions relating to travel plans, the driver's authority to operate the vehicle, or the safety of the officer 'do not bespeak of a lack of diligence.'" *Id.* (quoting *Everett*, 601 F.3d at 494-95). An officer may also ask for consent to search the vehicle, *United States v. Burton*, 334 F.3d 514, 518 (6th Cir. 2003),[2] and order the driver out of the vehicle to be patted down for weapons, *Johnson*, 555 U.S. at 331-32, without exceeding the scope of a traffic stop. The officer may run record checks through systems such as EPIC or BLOC without running afoul of this rule

---

[2] Although *Burton* preceded much of the later Sixth Circuit and Supreme Court discussion of this issue, its conclusion that "asking a detained motorist for consent to search his vehicle does not necessarily turn a reasonable traffic stop into an unreasonable one" has been cited by subsequent Sixth Circuit panels. *See United States v. Aguilera-Pena*, 426 F. App'x 368, 370 (6th Cir. 2011); *Everett*, 601 F.3d at 496.

4

as well. *See Campbell*, 511 F. App'x at 427 (noting a stop was "diligently pursued" until BLOC returned the officer's call with information); *United States v. Urietta*, 520 F.3d 569, 573-74 (6th Cir. 2008) (considering the end of the traffic stop to be three minutes after EPIC returned the officer's call). In considering whether prolonging a stop was reasonable, courts consider "the totality of the circumstances, which requires considering both the duration of the extraneous questioning and its subject matter." *Stepp*, 680 F.3d at 662.

Defendant argues Toby's deployment fell outside the scope of the traffic stop based on a stop sign violation because, at the moment Agent Bales was putting a lease on Toby, BLOC reported that the driver's license was valid and there were no outstanding warrants. At that point, Defendant argues, "delaying completion of a citation or warning because Toby was leashed up" was improper, as "[i]t was not necessary to use Toby in any way to determine if the driver of the vehicle rolled through the stop sign and would be cited" (Court File No. 21, p. 1).

Defendant ignores, however, that the Magistrate Judge determined that the driver's "consent to search the rental vehicle, which was granted while Agent Bales was still awaiting the results of the background checks, lawfully extended the duration of the traffic stop" (Court File No. 20, p. 10). As the Court noted above, law enforcement may ask a driver for consent to search a vehicle, which in turn permissibly extends the stop's duration. Defendant does not argue the consent here was unlawful. Nor does he argue Agent Bales had improperly delayed the stop at the time he received Moore's consent to search the vehicle, which occurred about seventeen minutes into the stop while Agent Bales was waiting for BLOC's report. Defendant also does not contend that once Toby alerted, Agent Bales had probable cause to search Defendant's backpack.

Thus, given the totality of the circumstances—including Moore's consent to search the car,

5

which necessarily extended the duration of the stop—the Court concludes the Magistrate Judge was correct in determining the deployment of Toby did not occur within the context of improperly extended stop.[3] Accordingly, the evidence uncovered was not the product of an illegal search or seizure and should not be suppressed.

## IV. CONCLUSION

For the foregoing reasons, the Court **ACCEPTS** and **ADOPTS** the R&R (Court File No. 20). Defendant's motion to suppress is **DENIED** (Court File No. 12).

**SO ORDERED.**

**ENTER:**

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**

---

[3] Because the Court concludes the Magistrate Judge was correct in this determination, the Court need not address whether the Magistrate Judge erred in also concluding reasonable suspicion would have served as an alternate ground for extending the stop.